## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.

LYNNE KAUFMAN,
on behalf of herself and all
others similarly situated,

      Plaintiff,

v.

BANK OF AMERICA, N.A.,

      Defendants.

_____/

### CLASS ACTION COMPLAINT

Plaintiff LYNNE KAUFMAN ("Plaintiff" or "Ms. Kaufman"), on behalf of herself, and all others similarly situated, files this action against BANK OF AMERICA, N.A. ("BANA") for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"), and Sections 559.72(9), Florida Statutes ("Florida Consumer Collection Practices Act" or "FCCPA"). In support Plaintiff alleges the following:

### INTRODUCTION

1.     Plaintiff and Class Members are Florida homeowners whose homes have been in foreclosure.  BANA is servicer of Plaintiff's and Class Members' homeowner mortgage loans and enforces, and regularly acts as, a debt collector of Plaintiff's and Class Members' mortgage loans.

2.     In its servicing of mortgage loans, BANA has routinely and systematically charged homeowners, including Plaintiff and Class Members, "estimated" fees via standardized statements ("Payoff Statements") it has sent them that list the amounts it requires for them to pay off their

loans.  In Payoff Statements, BANA readily concedes that their "Total Amount[s] Due **may include estimated fees**, *costs, additional payments and/or escrow disbursements that will become due*" but had yet to be incurred.

3.      In its servicing of mortgage loans, through Payoff Statements BANA has also routinely and systematically charged homeowners, including Plaintiff and Class Members, "Other Amounts Due," including an array of fees, including "vacant property registration" fees.

4.      These fees and the manner BANA discloses them are unlawful.

5.      The mortgage instruments of Plaintiff and Class Members only authorize charges for fees actually incurred for services actually performed. Years ago, in a widely publicized decision, the Eleventh Circuit held "estimated" fees violated the FDCPA and FCCPA.  Further, BANA has entered a government consent decree to that same effect. Moreover, the "vacant property registration" fees BANA charged were marked-up by additional fees for which BANA rendered no services and whose rates are set by local governments. Also, the FDCPA requires debt collections to represent debt information in a non-misleading manner and not to misrepresent amounts owed. Defendant's Payoff Statements violate both these proscriptions.

6.      For the foregoing conduct as detailed more fully below, Plaintiff brings two counts: Count I for BANA's violation of the FDCPA; and Count II for BANA's violation of the FCCPA. Defendant violated Plaintiff's and Class Members' substantive rights under these statutes, causing Plaintiff Ms. Kaufman and the putative Class Members cognizable injuries, giving rise to this action for statutory damages under them.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute.

8.     The Court has supplemental jurisdiction over the FCCPA claim under 28 U.S.C. § 1367, because this claim is so related to the federal FDCPA claims that it forms part of the same case or controversy under Article III of the United States Constitution.

9.     The Court has personal jurisdiction because Defendant does business throughout the United States, including Florida and this District and because specific conduct and acts giving rise to this litigation occurred in this District.

10.     Also, at all times material to this action, Defendant has maintained voluntary, continuous, and systematic contacts with Florida including local offices and operations in Florida, transacting substantial and regular mortgage servicing, foreclosure, and debt collection business in or affecting Florida, including of Plaintiff's loan in this District and other mortgage loans on residential properties including those of Class Members in this District and in Florida, making it foreseeable BANA would be subject to this Court's jurisdiction.

11.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction.

12.     All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.

13.     In an attempt to amicably resolve the issues between the parties, on January 29, 2018, Plaintiff sent Defendant a notice and cure letter attempting to resolve this dispute about its practice of charging "estimated" and "vacant property registration" fees to Plaintiff and Class Members.  Defendant ignored Plaintiff's attempt to resolve the issues at hand. This complaint followed.

## PARTIES

14.     Plaintiff Lynne Kaufman ("Ms. Kaufman") is a natural person and consumer who resides and owns a home in this District.  She is a citizen of Florida.  She has taken out a mortgage loan on that home memorialized by the standardized Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) for a single-family home.

15.     Each Class Member has entered this same form instrument or a substantially and materially similar standardized mortgage instrument as Plaintiff.

16.     The "estimated" and "vacant property registration" fees BANA charged Plaintiff relating to her mortgage loan and the mortgage loans of Class Members alleged throughout this complaint are the subject of this suit.

17.     Bank of America, N.A, ("BANA"), is a national banking association with it principal place of business in Charlotte, North Carolina, where it is a citizen.

18.     BANA is the successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP., Countrywide Bank, FSB, Nexstar Financial Corporation, and Wilshire Credit Corporation.

19.     BANA has regularly acted a mortgage servicer and collector of mortgage loan debts in this District and sent Plaintiff and Class Members Payoff Statements imposing on them "estimated" and "vacant property registration" fees for payoffs of their loans here.

20.     Whenever in this complaint reference is made to any act or omission of an entity defendant, such allegations shall be deemed to mean that the directors, officers, agents, employees, distributors, partners, contractors, third-party contractors, agencies or representatives of said entity defendant, did authorize or command such act or omission while actively engaged in the management, operation, control or representation of the affairs of said entity defendant, partnership

or entity, and while acting within the course and scope of their agency, distributorship, contract, employment, representation and capacity.

## APPLICABLE LAWS

**FDCPA**

21.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

22.     The FDCPA generally prohibits debt collectors, including BANA, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" [§ 1692e], and the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f, including, but not limited t:

   a.    False representations or misrepresentations of "the character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A);

   b.   False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B);

   c.   "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f (1); and,

   d.   "The use of any false representation or deceptive means to collect or attempt to collect" a debt. *Id.* at § 1692e (10).

**FCCPA**

23.     The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

24.     Like the FDCPA, the FCCPA prohibits persons, including BANA, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

25.     Specifically, the FCCPA states that no person, including BANA, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

26.     On or about June 10, 2005, Plaintiff purchased a home in Florida through a $244,000.00 loan from Countrywide Home Loans, Inc., secured by a mortgage on the property. A copy of Plaintiff's mortgage loan agreement is attached as **Exhibit A**.  A copy of the mortgage note is attached as **Exhibit B**.   The mortgage loan agreement is a Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) for Florida. Fannie Mae is the current owner/investor of the loan. Plaintiff's loan was primarily for personal, family, or household purposes.

27.     Servicer Letter to Ms. Kaufman.  At the time BANA acquired servicing rights to Ms. Kaufman's loan, the loan was in default. Thereafter, BANA routinely communicated in writing with her to collect this debt.

28.     Based on a letter BANA sent Ms. Kaufman, BANA became servicer of the loan on or about June 1, 2011.  The letter advising her it was taking over as servicer was a standardized

form letter, identified by a standardized alphanumeric code.   It stated in relevant part, in preprinted text,

> **Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.**

(emphasis in original).   The letter also advised Ms. Kaufman of her rights the under FDCPA and potential state analogues to that statute.  A copy of this form letter is attached as **Exhibit C**.

29.   <u>Payoff Statement to Ms. Kaufman</u>.  On or about October 2, 2017, Ms. Kaufman mailed BANA a letter requesting it provide her an accurate payoff balance. On or about October 16, 2016, BANA responded, mailing Ms. Kaufman a standardized Payoff Statement.  On or about October 24, 2017, Ms. Kaufman mailed BANA another letter advising BANA that balance was inaccurate.[1]  On or about November 13, 2017, BANA responded via mailed letter maintaining that the balance and Payoff Statement were accurate. *See* **Exhibit D**.

30.   The October 16, 2016 Payoff Statement BANA maintains was accurate was a standardized form, identified by a standardized alphanumeric code, advising Ms. Kaufman her mortgage loan was in foreclosure and again advising her in preprinted text, in relevant part,

> **Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.**

 (emphasis in original).   A copy of this Payoff Statement is attached as **Exhibit E**.

31.   In her Payoff Statement, BANA also informed Ms. Kaufman she must pay a "**Total Amount Required to Release Lien**." *Id*. at 1 (emphasis added).

---

[1] The request was sent via NEW REGS ADVISORY GROUP, whom Ms. Kaufman had authorized to receive all correspondence relating to her mortgage loan.

32.     This "Total Amount Required to Release Lien" was preceded by a table showing among others, a total for "*Other* Amounts Due" she was required to remit to pay off her mortgage loan.  That table was accompanied by a footnote referring to a *second* table appearing on a *second* page, itemizing an array of fees and charges for "Attorney/Trustee Fee," "Property Inspection," "Title Fee," "Advertising Cost," "Court Cost," "Court Filing Fee," "Mailing Fee," "Foreclosure Fee-Skip Trace," "Title Search Fee," and "Litigation Management Fee," and "Process Server" fee. *Id*. at 2 (emphasis added).

33.     Among this array of fees required to pay of her loan, in the Payoff Statement BANA also imposed a "vacant property registration" fee of $1,300.00.  That fee though has been set by law at no more than $250.00.  *See* Art. III, Sec. 10-51.5(i)(4), Boynton Beach Code of Ordinances.[2]

34.     BANA did not stop there. On the next page of the statement, BANA advised Ms. Kaufman that the "Total Amount Due *may include estimated fees, costs, additional payments and/or escrow disbursements that will become due,"* which at some may be incurred. *See* Exhibit E, at 1 (emphasis added).

35.     The Payoff Statement nowhere specifies what these "estimated" fees required to be paid as part of the "Total Amount Due" are. BANA did *not* state how these "estimated" fees were calculated, whether they may be disputed, or what provision of the uniform mortgage loan instrument gives rise to them. It simply stated that they "may" accrue by October 30, 2017 (the date on which the payoff statement became void), and that if payment of the "Total Amount Due" was made prior to October 30, 2017, Ms. Kaufman would receive a refund in the amount of the unaccrued fees. *See* Exhibit E.

---

[2] *See also* https://www.propertyregistration.com/Ordinances/Detail/fl/palm-beach/boynton-beach-city, https://www.propertyregistration.com/ordinances/detail/fl/palm-beach/boynton-beach-city?communitycategoryordinanceid=294.

36.     The Payoff Statement also nowhere disclosed that the "vacant property registration" fee was marked-up by additional fees for which BANA rendered no services and exceeded the legally required expense if and when it was incurred.

37.     To make matters worse, BANA imposed "estimated" and "vacant property registration" fees despite that the uniform mortgage instrument Ms. Kaufman executed specifically only authorizes fees that are incurred and disbursed for services actually performed in connection with a default on the loan. *See* Exhibit A at ¶ 9 (borrower pays for expenses "disbursed by Lender"), ¶ 14 (borrower pays fees for "services performed"), and ¶ 19 (borrower pays Lender for "expenses incurred").

### BANA's UNIFORM COURSE OF CONDUCT

38.     Ms. Kaufman's experience is not unique.  BANA has regularly serviced and collected on the home mortgage debts of Class Members defined below, and in its servicing of their mortgage loans, BANA has routinely and systematically charged Class Members, "estimated" and "vacant property registration" fees via standardized Payoff Statements mailed them when Plaintiff's and Class Members' loans were in default.

39.     Upon information and belief, BANA tracks its general business practices as it relates to each member of the Class, including Plaintiff, electronically and maintains electronic records that are searchable regarding the loans and debts it collects and the mortgages it services and the "estimated" and "vacant property registration" fees it imposes and collects.   Upon information and belief, BANA tracks via electronic records their written requests for information, communications with them, and Payoff Statements.

40.     As with Plaintiff, at the time BANA acquired servicing rights to each Class Member's loan, the loan was in default. Thereafter, BANA routinely communicated in writing

with him or her to collect this debt. And as with Plaintiff, each Class Member's mortgage loan was primarily for personal, family, or household purposes.

41.     Each Class Member like Plaintiff has executed the standardized Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) for a single-family home, or a substantially and materially similar standardized mortgage instrument, which, as stated above, only authorizes fees that are incurred and disbursed for services actually performed in connection with a default on the loan. Nevertheless, upon information and belief, BANA as a matter of routine and general business practice sent the above-described form Payoff Statement imposing on them "estimated" and "vacant property registration" fees to pay off their mortgages loans.

42.     Over 90 local governments around Florida have enacted ordinances requiring vacant property registrations.  Upon information and believe, no local government's fee for those registrations exceeds \$300.[3]  Nevertheless, BANA routinely marks up this charge beyond the fee incurred and services rendered for this government-imposed charge and has listed that amount in Payoff Statements as a charge that Plaintiff and each Class Member must pay to pay off his or her mortgage loan.

43.     As with Plaintiff, this Payoff Statement was as a matter of routine and general business practice based on a standardized form whose versions are assigned uniform alphanumeric codes.  These forms were materially the same for Plaintiff and Class Members and as with Plaintiff in them BANA uniformly included preprinted texts containing materially similar language,

    a.   Identifying BANA as a debt collector;

    b.   Representing a "Total Amount Required to Release Lien" preceded by a table showing among others, a total for "Other Amounts Due," accompanied by a

---

[3] *See* http://www.safeguardproperties.com/Resources/Vacant_Property_Registration/FL.aspx?filter=vpr&sort=enacteddate&dir=asc&page=all.

footnote referring to a table appearing on the second page, itemizing an additional array of fees and charges that must be remitted to pay off the mortgage loan;

c.   Stating the "Total Amount Due" *may* include "estimated" fees, costs, additional payments and/or escrow disbursements that will become due if at some point incurred;

d.   Demanding that any "estimated" fees must be remitted to pay off the loan;

e.   Among the array of other fees on page two, imposing a "vacant property registration" fee marked-up by additional undisclosed amounts for which BANA rendered no services and that exceeded the legally required expense at some point incurred;

f.   Demanding that a "vacant property registration" fee must be remitted to pay off the loan;

g.   Omitting information enabling Plaintiff and Class Members to determine the minimum amount they owe at the time by the void-after date, what they will need to pay to resolve the debt at any given moment in the future, and an explanation of the "estimated" and "vacant property registration" fees that will cause the balance to increase; and,

h.   Omitting information explaining that the "vacant property registration" is a government-imposed charge, which BANA is marking up beyond its actual expense and imposing amounts for the fee for which it renders no service.

44.   <u>BANA's Knowledge</u>.  Moreover, BANA has systematically made the demands for "estimated" and "vacant property registration" fees as part of the "Total Amount[s] Due" and "Total Amount Required to Release Lien" in Payoff Statements sent to Plaintiff and Class

Members, *when it knew* these were not legitimate debts and fees and that it had no lawful right to collect them.

45.    BANA maintains electronic records of the actual costs and fees associated with each borrower's loan, including the loans of Plaintiff and Class Members. BANA is a sophisticated mortgage loan servicer with compliance officers monitoring changes in the law and knowing the terms of mortgages it services and the statuses of debts and periodic payments it collects on them.

46.    Well before the Payoff Statements at issue, the Eleventh Circuit held that the collection of "estimated" fees was illegal, because the mortgage instruments only allowed for fees actually incurred by the debt collector or servicer.  The Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the defendants were not permitted to charge "estimated" fees that had not yet incurred in their reinstatement of loan letter. *Prescott v. Seterus, Inc.,* 635 Fed. Appx. 640, 647 (11th Cir. 2015) ("[The defendants] violated the FDCPA and FCCPA by charging [the plaintiffs] estimated attorney's fees that they had not agreed to pay in the security agreement.").

47.    Similarly, well before the Payoff Statements at issue, at least one Court held that marking up fees beyond expenses incurred for services actually rendered stated a violation of the FDCPA. *See Daniel v. Select Portfolio Servicing, LLC*, 159 F. Supp. 3d 1333, 1336 (S.D. Fla. 2016).

48.    Well before the Payoff Statements at issue, the media and trade publications consistently warned the industry against including estimated fees in reinstatement of loan letters, particularly those in the Eleventh Circuit under *Prescott*. Some of those industry warnings are :

     a.    *11th Circuit Finds Lender Violated FDCPA And Florida Law, Reverses Ruling*, Lexis Legal News (Dec. 7, 2015) ("The appeals court found that Seterus violated the FDCPA and the FCCPA by charging Prescott estimated attorney fees and refused to affirm the District Court's decision.");

b. *Eleventh Circuit Issues Stern Warning Against Inclusion of Estimated Fees and Costs in Reinstatement Quotes*, USFN (Jan. 4, 2016) ("The Prescott decision should cause any lender, loan servicer, or law firm that provides reinstatement quotes and/or figures to borrowers to examine its practices and procedures in order to determine whether or not information being provided to borrowers in reinstatement situations could potentially constitute a FDCPA violation (or a violation of state consumer protection law, such as the FCCPA). The Eleventh Circuit has sent a clear message to the financial services industry…");

c. *Recent Eleventh Circuit Reversal Sparks Upward Trend in Estimated-Fee FDCPA Litigation*, Lenderlaw Watch (Feb. 9, 2016) ("Concluding that the payoff quote was a demand for payment, [the Eleventh Circuit] held that the inclusion of fees that had not yet been incurred (even if expressly designated as such) was a demand for compensation not permitted by the plaintiff's mortgage agreement. . . . [L]oan servicers should consider the impact of *Prescott* on their communications with borrowers.");

d. *News Alert: FDCPA Violations for Estimated Fees and Costs in Reinstatement and Payoff Quotes*, Potestivo & Associates (April 15, 2016) ("The recent Appellate Court decision in Prescott, v. Seterus, Inc. . . . has gained nationwide notice. Although the decision is only binding on the Eleventh Circuit, it has opened the door and neatly laid the ground work for other jurisdictions to give similar rulings in the future. Consequently, it is important for servicers and attorneys to be informed and proactive regarding their decisions when it comes to estimated fees and costs in reinstatement and payoff quotes."); and,

e. *A Violation of the FDCPA – Estimating Attorney's Fees in Reinstatement Figures*, Legal League 100 Quarterly (Q2 2016) ("The federal courts have recently held that lenders may only charge for fees and expenses already incurred.").

49.     Also, well before the Payoff Statements at issue, BANA entered into and has been operating under a consent judgement with the federal government and Florida's attorney general providing in relevant part, BANA's foreclosure-related "service fees, including third-party fees, … shall be bona fide, reasonable in amount…disclosed in detail to the borrower…[and for services] actually rendered." *See US v. Bank of America*, United States District Court for the District of Colombia, Case No.: 1:12-cv-00361-RMC, ECF No. [11], Ex. A pp. A-12, A-35.

50.     Specifically, the consent judgement permitted BANA, its agents and its representatives to charge,

[A] default-related fee *only if the fee is for reasonable and appropriate services actually rendered* and one of the following conditions is met:

a.      The fee is expressly or generally authorized by the loan instruments and not prohibited by law or this Agreement;

b.      The fee is permitted by law and not prohibited by the loan instruments or this Agreement; or

c.      The fee is not prohibited by law, this Agreement or the loan instruments and is a reasonable fee for a specific service requested by the borrower that is collected *only after clear and conspicuous disclosure of the fee is made available to the borrower*.

51.      <u>The Common Injury</u>. The FDCPA and the FCCPA respectively create shared, substantive statutory rights for Plaintiff and Class Members.

52.      The FDCPA creates a private right of action under 15 U.S.C. § 1692k.  By the FDCPA Congress created shared, substantive statutory rights of Plaintiff and Class Members to be enforced privately, including,

a. The rights to receive accurate information, representations, and disclosures, about debts, including the fees comprising them;

b. The rights to receive information, representations, and disclosures, about debts, including the fees comprising them, that do not falsely or in a misleading manner state, or do not mispresent, "the character, amount, or legal status of any debt;"

c. The rights to receive information, representations, and disclosures, about debts, including the fees comprising them, that do not falsely or in a misleading manner state, or do not mispresent, the fee "compensation which may be lawfully received by any debt collector for the collection of a debt;"

d. The rights to be protected from unfair or unconscionable practices in collections of their debts, including, but not limited to, the right to be obligated for and subject to

collection of debt amounts and fees *only* when expressly authorized by the agreement creating the debt or permitted by law; and,

e. The rights to protection from deceptive means of collecting debts, including the fees comprising them.

*See* 15 U.S.C. §§ 1692, 1692e, 1692f, 1692k.

53.     As stated above, BANA through its Payoff Statements imposed "estimated" fees that are not permitted in this Circuit and not permitted under Plaintiff's and Class Members' mortgage instruments, which only authorize fees that are incurred and disbursed for services actually performed in connection with a default on the loan. BANA likewise imposed "vacant property registration" fees, which are not permitted by law or these mortgage instruments, because BANA marked them up by additional undisclosed amounts for which BANA rendered no services and which exceeded the government-mandated expense it paid.  Also, BANA stated these fees in a various array of fees in tables over two pages and omitted any information enabling Plaintiff and Class Members to determine the minimum amount they owe at the time by the void-after date, and information explaining that the "vacant property registration" fee was a government-imposed charge, which BANA was marking up beyond its actual expense and imposing amounts for the fee for which it rendered no service.

54.     By BANA's imposition and representations in Payoff Statements of "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them, BANA violated the shared, substantive statutory rights of Plaintiff Class Members under the FDCPA, because in those statements it,

a. Falsely or in a misleading manner stated, or mispresented the total amount of debt owed by Plaintiff and each Class Members;

b.  Falsely or in a misleading manner stated, or mispresented the characters, amounts, or legal statuses of their debts;

c.   Falsely or in a misleading manner stated, or mispresented the compensation that BANA might lawfully receive for the collection of their debts;

d.   Engaged unfair or unconscionable practices in collections of amounts due, by imposing "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them, when those amounts were not expressly authorized by their mortgage instruments creating the debt or not permitted by law; and,

e.  Engaged in deceptive means of collecting debts, including "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them, by representing them in a confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

55.    The FCCPA also creates a private right of action. *See* § 559.77, Fla. Stat.  By enacting the FCCPA the Florida Legislature created shared, substantive statutory rights of Plaintiff and Class Members to be enforced privately, including, but not limited to, the rights to be protected from collection of their debts by (a) persons who know that the debts they are attempting collect from them are not legitimate or (b) persons that assert the existence of some legal right *vis-à-vis* their debts when such person knows that the right does not exist. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

56.    By BANA's imposition and representations in Payoff Statements of "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them, BANA violated the shared substantive rights of

Plaintiff Class Members under the FCCPA, because in those statements BANA attempted to collect debts when it knew,

    a.   That it had no legal right to collect them or that the debts were not legitimate under the terms of Plaintiff's and Class Members' mortgage instruments; and,

    b.   That it had no legal right to collect them or that the debts were not legitimate because they were not permitted by law.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff asks to be designated as a "Class Representative," and as Class Representative brings this action under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all other persons similarly situated—the "Classes" or "Class Members" defined as follows:

FDCPA "Estimated" Fee Class
Within the applicable statutes of limitation, all natural persons, (a) whose residences with addresses in Florida were mortgaged under the standardized Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) or a substantially similar standardized residential mortgage instrument; (b) for whose mortgage loans under those instruments BANA acquired servicing rights after the loans were in default; and (c) whom BANA mailed a Payoff Statement after acquiring servicing rights, representing that the "Total Amount Due" may include estimated fees, costs, additional payments and/or escrow disbursements that will become due."

FDCPA "Vacant Property Registration" Fee Class
Within the applicable statutes of limitation, all natural persons, (a) whose residences with addresses in Florida were mortgaged under the standardized Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) or a substantially similar standardized residential mortgage instrument; (b) for whose mortgage loans under those instruments BANA acquired servicing rights after the loans were in default; and (c) whom BANA mailed a Payoff Statement after acquiring servicing rights, representing a "vacant property registration" fee among the "Other Amounts Due."

FCCPA "Estimated" Fee Class
Within the applicable statutes of limitation, all natural persons, (a) whose residences with addresses in Florida were mortgaged under the standardized Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) or a substantially similar standardized residential mortgage instrument; (b) whose mortgage payments under those instruments BANA collected; and (c) whom BANA mailed a Payoff

Statement, representing the "Total Amount Due" may include estimated fees, costs, additional payments and/or escrow disbursements that will become due."

FCCPA "Vacant Property Registration" Fee Class

Within the applicable statutes of limitation, all natural persons, (a) whose residences with addresses in Florida were mortgaged under the standardized Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) or a substantially similar standardized residential mortgage instrument; (b) whose mortgage payments under those instruments BANA collected; and (c) whom BANA mailed a Payoff Statement, representing a "vacant property registration" fee among the "Other Amounts Due."

Plaintiff and Class Members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence. Excluded from the Classes are persons whose Payoff Statements according to BANA records were returned as undeliverable, persons whose mortgages were for commercial purposes, not for personal, family, or household purposes, and Defendant, and any subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

58. ***Numerosity (Rule 23(a)(1)).*** Plaintiff alleges on information and belief that the number of Class Members is so numerous that joinder of them is impractical. At this time, Plaintiff does not know the exact number of Class Members, but the members of the Classes will be easily ascertained through Defendant's electronic records, data, and databases. Plaintiff's belief is bolstered by information indicating BANA mortgage servicing garners billions of dollars in servicing revenue per year, as of first quarter 2017 BANA was servicing 3.72 million loans with unpaid balances of $519.1, of which approximately .5 % were in foreclosure, BANA is part of corporate structure that has purchased large piece of distressed mortgages, BANA was successor via merger to among others Countrywide Home Loans Servicing LP that serviced distressed mortgages, and Florida has had one of the highest foreclosure rates in the US.

59.    *Commonality (Rule 23(a)(2))*.  There are common questions of law and/or fact that predominate over any questions affecting only individual members of the class.    These predominant common questions of law and/or fact include the following:

      a.    Whether the Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) or a substantially similar standardized residential mortgage instrument executed by Plaintiff and Class Members authorizes BANA to impose "estimated" fees;

      b.    Whether the Fannie Mae/Freddie Mac Uniform Instrument (Form 3010) or a substantially similar standardized residential mortgage instrument executed by Plaintiff and Class Members authorizes BANA to impose "vacant property registration" fees;

      c.    Whether BANA's impositions of "estimated" and "vacant property registration" fees violate the FDCPA;

      d.    Whether BANA's impositions of "estimated" and "vacant property registration" fees violate the FCCPA;

      e.    Whether Plaintiff and Class Members are entitled to statutory damages under the FDCPA and the amounts thereof; and,

      f.    Whether Plaintiff and Class Members are entitled to statutory damages under the FCCPA and the amounts thereof.

60.    *Typicality (Rule 23(a)(3))*.  The claims of the Class Representative are typical of the claims that would be asserted by other members of the Class in that, in proving her claims under the FDCPA and FCCPA, Plaintiff will simultaneously prove the claims of all Class Members.  The rights afforded under the FDCPA and the FCCPA are the same for Plaintiff and Class Members.    Plaintiff and each Class Member entered a substantially similar standardized

mortgage instrument and was sent the standardized Payoff Statement described above by BANA, when it was trying to collect a debt under that mortgage.  If this conduct violates the FDCPA and the FCCPA, it is does so not only for Plaintiff but for each Class Member. Moreover, any statutory damages awarded under those statutes will be formulaic.

61.    ***Adequacy (Rule 23(a)(4))***. The Class Representative is a natural person whose mortgaged residence is in Florida, and she has no conflicts of interest and will fairly and adequately protect and represent the interests of each member of the Class.   Additionally, the Class Representative is fully cognizant of its responsibility as Class Representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action.  Each class counsel has extensive experience in class and/or FDCPA or FCCPA claims in this District.

62.    ***Predominance and Superiority Rule 23 (b)(3)***.  The common questions identified above predominate over any questions of law or fact affecting only individual members of the Class.  Moreover, class treatment is clearly superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

**(Fair Debt Collection Practices Act 15 USC §§ 1692e, 1692f)**

63.    Plaintiff incorporates by reference paragraphs1-22, 26-43, 51-54, and 57-62, as if set forth fully herein.

64.    Plaintiff and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3) when each purchased a home by mortgage in Florida.

65.    The mortgage loans of Plaintiff and Class Members are debts under the FDCPA because each is "an[] obligation or alleged obligation of a consumer to pay money arising out of

a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

66.     BANA is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiff and Class Members via Payoff Statements.  The Payoff Statements and servicing letter described above indeed uniformly confirmed this by identifying BANA as a debt collector.  And BANA acquired the servicing rights of Plaintiff and each Class Member's mortgage after it was in default.

67.     BANA engaged in direct "communications" with Plaintiff and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for reinstatement or payoff of their mortgage loans.

68.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

69.     As stated above in paragraphs 52-54, Congress created shared, substantive statutory rights of Plaintiff and Class Members to be privately enforced and protected under the FDCPA, which BANA has violated.  *See* 15 U.S.C. §§ 1692, 1692e, 1692f.

70.     15 U.S.C. §1692e states, in relevant part,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ……
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> ………
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer.

71.     15 U.S.C. § 1692f states, in relevant part,

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

72.     Based on the foregoing allegations, BANA used deceptive means of collecting debts—the "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them—in violation of 15 U.S.C. § 1692e(10), because it represented them in Payoff Statements in a confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

73.     Based on the foregoing allegations, BANA violated 15 U.S.C. § 1692e(2)(A) because through its Payoff Statements imposing "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them, it falsely or in a misleading manner stated, or misrepresented, the amount, character, or status of the amounts needed to payoff Plaintiff's and Class Members' mortgage debts.

74.     Based on the foregoing allegations, BANA violated 15 U.S.C. § 1692e(2)(B) when through its Payoff Statements imposing "estimated" and "vacant property registration" fees, it falsely or in a misleading manner stated, or mispresented, the compensation that it might lawfully receive from Plaintiff and Class Members.

75.     Based on the foregoing allegations, BANA used unfair means of collecting amounts for "estimated" and "vacant property registration" fees and the "Total Amount[s] Due"

and "Total Amount Required to Release Lien" incorporating them in violation of 15 U.S.C. §

1692f, because the amounts were not expressly authorized by Plaintiff's and Class Members'

mortgage instruments creating their debts as they must be under those instruments, or they were

not permitted by law.

76.     These violations of FDCPA caused injury to Plaintiff and Class Members by

violating the foregoing substantive FDCPA rights.

77.     As a result of these violations, Plaintiff and Class Members are entitled to

statutory damages together with reasonable attorney's fees and costs under 15 U.S.C. § 1692(k).

**COUNT II**
(**Florida Consumer Collection Practices Act § 559.72(9), Fla. Stat**.)

78.     Plaintiff incorporates by reference paragraphs 1-20, 23-51, 55-56, and 57-62, as if

set forth fully herein.

79.     Plaintiff and each Class Member was a "debtor" and "consumer" as defined by

Section 559.55(8), Florida Statutes, when each purchased a home by mortgage in Florida.

80.     In Section 559.72, Florida Statutes, the FCCPA mandates that "no person" shall

engage in certain practices in collecting consumer debts. BANA is a "person" within the meaning

of the FCCPA. *Id*.; *see also* § 1.01(3), Fla. Stat.

81.     The mortgage loans of Plaintiff and Class Members are each a "debt" under the

FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money

arising out of a transaction in which the money, property, insurance, or services which are the

subject of the transaction are primarily for personal, family, or household purposes, whether or not

such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

82.     The FCCPA creates a private right of action. *See* § 559.77, Fla. Stat.

83.     As stated above in paragraphs 55-56, the Florida Legislature created shared, substantive statutory rights of Plaintiff and Class Members to be enforced and protected privately under the FCCPA, which BANA violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

84.     Under Section 559.72, Florida Statutes,

In collecting consumer debts, no person shall:

……

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimateor assert the existence of some other legal right when such person knows that the right does not exist.

85.     Based on the foregoing allegations, BANA violated Section 559.72(9), Florida Statutes, by attempting to collect "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

86.     Based on the foregoing allegations, BANA violated Section 559.72(9), Florida Statutes, by attempting to collect "estimated" and "vacant property registration" fees and the "Total Amount[s] Due" and "Total Amount Required to Release Lien" incorporating them, when, as stated above, it knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

87.     These violations of FCCPA caused injury to Plaintiff and Class Members by violating the foregoing substantive FCCPA rights.

88.     As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

**JURY DEMAND AND RESERVATION**

Plaintiff respectfully requests a trial by jury on all issues so triable.

**RELIEF REQUESTED**

WHEREFORE Plaintiff, on behalf of herself and the Class, respectfully requests this

Court to award against BANA in favor of Plaintiff and the Class all of the following:

    a.  Certifying either Count I or Count II or both counts for class treatment under

        Federal Rules of Civil Procedure 23(a) and (b)(3), appointing Plaintiff as Class

        Representative, and appointing Plaintiff's attorneys as counsel for the Class;

    b.  A judgment for statutory damages under the FDCPA or the FCCPA;

    c.  A judgment for costs and reasonable attorney's fees under the FDCPA or the

        FCCPA; and,

    d.  Any other relief for Plaintiff and the Class the Court deems just and proper.

Respectfully Submitted this 20th day of April 2018, by:

ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, Florida 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781

By /s/ Jordan Shaw
    JORDAN A. SHAW, ESQ
    Fla. Bar No.: 111771
    Email: jshaw@zpllp.com
    Secondary: mperez@zpllp.com
    MARK S. FISTOS, ESQ.
    Fla. Bar No.: 909191
    Email: mfistos@zpllp.com
    KIMBERLY A. SLAVEN, ESQ.
    Fla. Bar No.: 117964
    Email: kslaven@zpllp.com

CONSUMER LAW ORGANIZATION, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 692-6013
Facsimile: (305) 574-0132

By /s/ Dennis Card
    J. DENNIS CARD JR., ESQ.
    Fla Bar No.: 0487473
    Email: DCard@cloorg.com
    DARREN R. NEWHART, ESQ.
    Fla Bar No.:115546
    Email: Darren@cloorg.com